**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 18, 2013

No. 11-41382

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HUGO CRUZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:11-CR-494-1

Before REAVLEY, JOLLY, and SMITH, Circuit Judges.

PER CURIAM:[*]

Hugo Cruz was indicted for conspiracy and possession with intent to distribute in excess of 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. A jury convicted him on both counts. On appeal, Cruz argues that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that one of its witness's visa did not allow him to be lawfully employed in the United States. Additionally, Cruz challenges the admission of a Michigan state trooper's testimony regarding Cruz's prior drug-

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-41382

related arrest and conviction under Federal Rules of Evidence 403 and 404(b), arguing that the evidence was irrelevant and its probative value was outweighed by its tendency to prejudice the jury.[1]   Concluding that the district court committed no error, we AFFIRM.

I.

The government alleged that in June 2010, Cruz offered to pay Marco Toledo $10,000 to help him smuggle marijuana from Mexico into the United States.  The plan called for Cruz and Toledo to drive a van from Chicago, Illinois, to Guadalajara, Mexico.  Hidden compartments in the van would be loaded with marijuana in Mexico, Toledo would drive the van back to the United States, and Cruz would fly back to Chicago.  The van was a 1997 Ford registered to Cruz's father, Andres Cruz.

Evidence showed that Cruz transferred title to the van to Toledo and procured insurance for the van before the pair left Chicago. Cruz and Toledo drove the van to Mexico.  The van was loaded with marijuana under the supervision of both Cruz and Toledo.  Toledo attempted to drive the van back to the United States, but he was apprehended.  Toledo confessed, pled guilty, and testified against Cruz.  Cruz's counsel argued that Toledo's testimony would not be worthy of belief because he was a convicted drug smuggler who was trying desperately to decrease his sentence by providing assistance to the prosecution.

One of the government witnesses at Cruz's trial was Guillermo Gonzalez Perales ("Gonzalez").  Gonzalez, through an interpreter, testified that he was currently employed by the Magnum Insurance Agency in North Aurora, Illinois, and had been in June 2010, when Cruz came in to buy insurance for the van. He testified that Cruz came in with one or two other men.  Gonzalez stated that

---

[1] Cruz also asserts cumulative error, but there clearly was no accumulation of errors necessitating reversal in this case under our caselaw.  *See United States v. Delgado*, 672 F.3d 320, 343-44 (5th Cir. 2012) (en banc), *cert denied*, 133 S. Ct. 525 (2012).

No. 11-41382

Cruz purchased policies for Illinois and for Mexico to cover the van, with the title holder being Toledo. Gonzalez testified that he often sold insurance policies to one person for the benefit of another without seeing identification from the beneficiary.

The other evidence relevant to this appeal was the testimony of Michigan state trooper John Norvell. Norvell testified that when Cruz was 16 years old he was found driving a vehicle with approximately three pounds of cocaine concealed in a speaker box in the trunk. The district court allowed the government to introduce evidence of the prior incident to show Cruz's knowledge and intent. Cruz's timely objection to the admission of this evidence under Rules 403 and 404(b) was overruled.

Following the trial, the jury convicted Cruz on both counts of the indictment. Cruz filed a motion for a new trial, alleging the existence of newly discovered evidence that had been withheld in violation of *Brady*. Specifically, Cruz asserted that the government withheld information that Gonzalez was an alien in violation of the terms of his visa, was potentially using false documents to secure employment, and had not been prosecuted criminally or had any adverse immigration action taken against him. The district court denied Cruz's motion, and the case proceeded to sentencing. Cruz was sentenced to 51 months of imprisonment on each count, to run concurrently. The district court also imposed three- and two-year concurrent terms of supervised release. Cruz timely appealed.

## II.

We first address Cruz's *Brady* claim. Cruz argues that the government violated *Brady* by failing to disclose that Gonzalez's immigration status under a "B1-B2" visa would not have permitted him legally to work in the United States—meaning that Gonzalez was illegally working at the insurance agency when he sold Cruz insurance for the van in which the marijuana was discovered.

No. 11-41382

Assuming *arguendo* that Gonzalez's immigration status—whether he was in violation of the terms of his visa—constitutes permissible impeachment evidence, Cruz nevertheless fails to show that the admission of such evidence would have had a material effect on the outcome of his trial.

We review alleged *Brady* violations *de novo*, but "we must proceed with deference to the factual findings underlying the district court's decision." *United States v. Brown*, 650 F.3d 581, 589 (5th Cir. 2011) (citation omitted), *cert. denied*, 132 S. Ct. 1969 (2012). "To establish a *Brady* violation, the defendant must prove that (1) the prosecution suppressed evidence, (2) it was favorable to the defendant, and (3) it was material." *Id.* at 587-88. "There is no difference between exculpatory and impeachment evidence for purposes of *Brady* . . . but it must, somehow, create a reasonable probability that the result of the proceeding would be different." *Id.* at 588. "A 'reasonable probability' exists when the government's suppression of evidence 'undermines confidence in the outcome of the trial.' To prove a reasonable probability of a different result, the 'likelihood of a different result must be substantial, not just conceivable.'" *Id.* (citations omitted).

At the outset we note that we have serious doubts about whether the prosecution suppressed evidence in the instant case.[2] But, even if Gonzalez's immigration status was suppressed, there is no likelihood of a different result. Gonzalez was called to testify for the limited purpose of corroborating Toledo's testimony that Cruz had purchased the insurance for the van in Toledo's name.

---

[2] The district court did not make a finding that no evidence had been suppressed, but we note that the prosecutor informed defense counsel that, (1) the witness would be called, (2) he was in the country pursuant to a B1-B2 visa, (3) the government had had issues with his social security number, and (4) defense counsel could question him before he took the stand. Defense counsel opted not to question Gonzalez beforehand and did not inquire about his immigration status while he was on the stand. Indeed, counsel noted that she was unaware about the relevance of a B1-B2 visa until after the trial. Whether the government suppressed evidence under these facts certainly is questionable, but we need not resolve the issue here.

No. 11-41382

As such, his testimony was brief. Cruz's argument in favor of materiality is that because Gonzalez corroborated the testimony of Toledo—the key witness whose credibility was central to the trial—whether Gonzalez was being given leniency on his immigration violation in exchange for his testimony could have altered the jury's determination of Toledo's credibility. But, as the district court noted, Gonzalez was a neutral witness with no preexisting personal relationship with either Cruz or Toledo. Although arguably conceivable that Gonzalez's immigration status could have affected the jury's credibility determination, Cruz has failed to show that such limited impeachment evidence of a neutral, tangential witness was substantially likely to produce a different result. No *Brady* violation occurred in this case.

### III.

Next, we turn to Cruz's claim that the district court erred in admitting evidence of his past drug arrest in violation of Federal Rules of Evidence 403 and 404(b).

"Where the party challenging the trial court's evidentiary ruling makes a timely objection, we review the ruling under an abuse of discretion standard." *United States v. Sumlin*, 489 F.3d 683, 688 (5th Cir. 2007). "In a criminal case, review of the lower court's evidentiary rulings is necessarily heightened." *Id.* Rule 404(b) states:

> Other Crimes, Wrongs, or Acts. . . . Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

"Rule 404(b) only applies to limit the admissibility of evidence of extrinsic acts." *Sumlin*, 489 F.3d at 689. "First, it must be determined that the extrinsic evidence is relevant to an issue other than the defendant's character. Second,

5

No. 11-41382

the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc); *see also United States v. Heard*, 709 F.3d 413, 429-30 (5th Cir. 2013) (citing *Beechum*).

Cruz timely objected to the district court's admission of the evidence; we thus review for an abuse of discretion. Officer Norvell testified about Cruz's 1998 arrest, where he was charged with possession with intent to deliver "50 to 225 grams of cocaine." Although Cruz pled to a lesser offense, the evidence was undisputed that approximately three pounds of cocaine was found hidden in a speaker box in the trunk of the car that Cruz was driving. The district court found that evidence of the prior offense went to Cruz's intent or knowledge.

Cruz argued at trial, and again on appeal, that the evidence was highly prejudicial, dissimilar from the events at issue in the instant case, and too remote to be probative because it occurred 13 years earlier when Cruz was a juvenile. Although the evidence arguably is prejudicial, the district court did not abuse its discretion in admitting the officer's testimony.

First, the evidence is relevant despite the difference in the type of drug discovered. *See* FED. R. EVID. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."). The act of concealing more than 50 kilograms of marijuana in hidden compartments in a passenger van certainly is similar to Cruz's earlier arrest involving cocaine surreptitiously hidden in a speaker box in the trunk of a car. As such, the district court did not abuse its discretion in concluding that the prior act was relevant to Cruz's knowledge and intent in the instant case. *See United States v. Pompa*, 434 F.3d 800, 805 (5th Cir. 2005) ("In a drug-trafficking case, the issue

No. 11-41382

of intent is always material.")[3]  Second, the district court did not abuse its discretion in finding that the probative value was "not substantially outweighed by its undue prejudice." *Beechum*, 582 F.2d at 911.  In assessing probative value and the risk of undue prejudice, courts "make a 'commonsense assessment of all the circumstances surrounding the extrinsic offense.'" *United States v. Cockrell*, 587 F.3d 674, 678 (5th Cir. 2009) (citation omitted).  And, "Rule 403 'would seem to require exclusion only in those instances where the trial judge believes that there is genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'" *Id.* at 679 (quoting *Beechum*, 582 F.2d at 915 n.20).  In this case, the district court carefully weighed the evidence and gave the jury multiple limiting instructions designed to reduce the potential for unfair prejudice.  We thus conclude that the district court committed no error in admitting Officer Norvell's testimony.

## IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[3] Additionally, and contrary to Cruz's argument, the time gap between the earlier arrest and the instant offense is not a *per se* bar to its relevance or probative value. *United States v. Cockrell*, 587 F.3d 674, 680 (5th Cir. 2009) ("Although remoteness of the extrinsic acts evidence may weaken its probative value, the age of the prior conviction does not bar its use under Rule 404." (quoting *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996)) (internal quotation marks omitted)).